Good morning. My name is Grace Palacio from the Office of the State Appellate Defender. Let me say to you, this room, you need to speak up and you're competing with traffic on LaSalle Street. That's not an argument I want to make. May it please the Court, my name is Grace Palacio and I represent the defendant, Alan Blanch. Alan's opening brief raised three issues, but for purposes of this oral argument, I will focus my discussion on arguments one and two. Whether Alan's conviction should be reduced to involuntary manslaughter, and whether the trial court erred when it did not instruct the jury on involuntary manslaughter, and when it did not allow Alan's entire conversation with his family into evidence. Unless this Court has any question about Alan's excessive sentence argument, I will stand on his opening reply briefs on that matter. At trial, Alan's statement was the only evidence that explained what happened to Nikki Thurmond. According to Alan, Nikki called to break up with him and said that he needed to get his stuff from her house. Alan had been drinking at a friend's, and when he arrived, he and Nikki began to argue. Nikki tried to push him out of the house, and this turned physical, and they ended up wrestling and fighting on the floor. Alan said that she scratched at his face and hands, and as the fight escalated, Alan said that he, quote, just lost it, and began to choke her. When she told him she couldn't breathe, Alan explained that he wanted to stop, but that he couldn't, and that something came over him. After Alan realized that Nikki was dead, he got scared, left the house, and called his sister. Then he went back to the house, hoping that maybe Nikki was still alive, but he felt that her body was cold and she wasn't breathing. The offense described in Alan's statement was not first-degree murder. Instead, the evidence only established that he committed involuntary manslaughter. How do you reconcile your position on that with the testimony of the physician who was an expert who testified that in order to choke someone to death, it requires certain pounds of pressure and it has to be continuous pressure for several minutes, which contradicts your position that it was sort of a mere accident? The argument for that is that Alan specifically stated that, you know, when he began to choke her, he lost it, and something came over him. So while the medical examiner's testimony describes an extended length of time in which you would need to apply this pressure to a person in order for them to not only pass out, but to eventually die, you know, two and a half minutes, three minutes may seem like a long period of time if, you know, you're looking at the clock, you're counting the seconds, you're watching water boil. But if you're thinking about what he described has been happening to him in this moment, he got home, he got into a fight, this fight escalated into something on the floor, and then something came over him, and you have to imagine his feelings in that moment. He's scared, he's panicked, he's angry, he doesn't know what's happening possibly. As he explained, he was out of it. So it might seem like an extended period of time where it can't possibly be without the mental state to deliberately do this. He may have been deliberately doing this, but without the conscious disregard of what his actions might have led to. And that's the whole point, that's the whole difference between... But didn't he say that she said, I can't breathe? Yeah, and he said he heard her say he can't breathe and that he wanted to stop, he just couldn't. Again, this goes to his mental state. Did he have the mental state? Was he acting with recklessness when he said he heard her say this, and yet he could not stop what he was doing? What's the difference between first-degree murder and involuntary manslaughter? All the case law says it goes to mental state. And Allen's own words about what his mental state at that time shows that he did not have the knowledge or the intent to kill. He just could not stop what he was doing. So as we said, that's his statement. He said he lost it. He couldn't stop. These facts show that his mental state was recklessness. And accordingly, the trial court or this court should find that these acts were not first-degree murder, but instead were involuntary manslaughter. Similarly, turning to the second issue, Allen was denied a fair trial where the court, one, refused to instruct the jury on the lesser-included offense of involuntary manslaughter, and two, precluded the defense from introducing into evidence Allen's entire conversation with his family where it was necessary to put his statement that I killed Nikki into its proper context. First, Allen was entitled to have the jury instructed on involuntary manslaughter. Defense counsel asked the court for the instruction because, as is the law, all that is required is some evidence to support that instruction. And as we've already discussed, there was some evidence. Allen's own statement went to mental state, which goes to involuntary manslaughter. He said he just lost it. He wanted to. He couldn't let go. As Leach, presided by the state, says, whether something is first-degree murder or involuntary manslaughter is a question for the trier of fact. In Leach, the trial court, because it was a bench trial, got to hear facts that were similar to these and determine whether or not it was first-degree murder or involuntary manslaughter. In this case, Allen chose to go with a jury trial. But unfortunately, because of the trial judge's decision about whether or not the jury should hear an instructor involuntary manslaughter, he did not even get the benefit of having the trier of fact in his own case decide whether or not the offense was first-degree murder or involuntary manslaughter. All that he needed was some evidence to support his mental state, which showed involuntary manslaughter. So what is the some evidence that you say is here? The some evidence of involuntary manslaughter. Well, that goes to a point.   Or is there any evidence that as to his own statement that he said that when he began the choker, he lost it and that he wanted to stop but that he couldn't and that something came over him? Just like Leach, his statements suggested that there was a mental state that did not coincide with first-degree murder, but instead was indicative of it. Well, I think Leach shows... Other than his own statement. First of all, I want to say that Leach shows that what he said is some evidence that should be considered by a trier of fact. But then this also moves us to the second part of this argument, which is that the trial court erred when it did not allow the entirety of his conversations with his family into evidence. He said that after he killed Nikki and left the house, he called his sister. And according to his sister, when they talked on the phone, he said, I killed Nikki. But he also said that he was sorry and he didn't mean it. Unfortunately, the trial court only allowed in the statement that he said, I killed Nikki and precluded the defense from presenting the rest of his conversation with both his sister and his nephew, which not only would have provided evidence for which the jury could have considered whether or not this was first-degree murder or not, but also would have provided additional evidence that would have supported involuntary manslaughter. What is it that you think should have been admitted under the completeness doctrine that wasn't admitted through their testimony? Well, the only thing we have is what Savannah told the police in her statement. And according to her statement, she said that he said, I killed Nikki and that he was crying. But he also said that he was sorry and that he didn't mean it. The fact that he said he was sorry and he didn't mean it also is evidence of what his intent was. Did he unintentionally kill? So the evidence of him saying he was sorry was already there in the case through Devona, is that right? Devona said that he was crying and was upset. But that is different, substantially different than saying he's sorry and quote, unquote, he didn't mean it. Didn't mean it talks to his intent, whether or not this was something that he meant to do. And then even worse, the state then took his simple statement of I killed Nikki and then in closing argument, talked about the fact that he would call his family and said, I killed Nikki, showed that he was uncaring. And the only thing he cared about was whether or not how he could get away from the police. So not only was he not allowed to present his entire defense of saying, you know, there's also this evidence showing that I didn't have the intent to do this. Or wouldn't you interpret, I killed Nikki. I'm sorry. I didn't mean it to mean that he didn't have the requisite mental state that you were talking about. I think that can go either way. It's up to the trier of fact. And they were denied the opportunity to even consider this. They did not hear that he said I didn't mean it. They didn't hear that he said he was sorry. All that they heard was that he said I killed Nikki and that he was upset. That's substantially different than hearing someone say I didn't mean it when someone's mental state is at the heart of it. Your opponent seems to argue that the rule of completeness only applies to written or recorded statements. That is incorrect. The completeness doctrine per, I believe it's People v. Cragen, which is a second district case from 2013, says it also applies to oral statements. So the fact that this was not written down or recorded does not preclude the completeness doctrine from also including the oral statements that he made to his sister and his nephew immediately after the offense. All at the same time, this is what the completeness doctrine requires, and these statements meet that requirement. So do you think under Cragen that the completeness doctrine still exists despite the codification of the rules of that place? I do. I do. I think while Rule 106 may have specifically codified written and recorded statements, oral statements according to Cragen still apply. It specifically mentions oral statements as being considered under the completeness doctrine. Therefore, the Court's error in denying the defense motion to request the involuntary manslaughter denied Allen a fair trial, as the Illinois Supreme Court has recognized. This is an important third option for jurors to have, because in cases such as this, the juror is considering first-degree murder, and they might not think that that crime has been fully proven by the state, but also does not feel that maybe this is a crime in which they should give an acquittal. But had they been given an involuntary manslaughter instruction, they would have been given an option to recognize that something criminal might have happened, but they were only given the option of first-degree murder or acquittal, and that's the danger. And so that's exactly why we need to have the jury instructed unless there are included offenses. These errors are not harmless beyond a reasonable doubt, and this Court should remand for a new trial based on these errors as well. To conclude, pursuant to Argument 1, the evidence in this case showed that Allen acted recklessly when he killed Nikki Thurmond, and as such, this Court should reduce his conviction to involuntary manslaughter. Pursuant to Argument 2, the trial court denied Allen a fair trial when it did not instruct the jury on involuntary manslaughter, and when it did not allow the entirety of his conversations into evidence. Finally, counsel stands on the arguments made in opening and reply briefs about Allen's de facto life sentence and the fact that it is excessive, given the specific facts of this case and his significant mitigating factors. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Mary Hodson Buehler, Assistant State's Attorney on behalf of the people. The physical act of choking Nikki for 10 to 20 seconds, after she says she cannot breathe when she is struggling, and after she is rendered unconscious, and then continuing to choke her for another 3 to 6 minutes, is the antithesis of recklessness. In this case, the evidence showed that the defendant knew it was substantially certain that his act of strangling Nikki would result in the death of recklessness. This was not a case of recklessness. This was a case of murder. And when the defendant heard Nikki say, I cannot breathe, and Nikki was struggling, he continued to strangle her. She passed out, but again, he continued. The medical examiner testified that it takes 10 to 20 seconds for someone to pass out, and another 3 to 6 minutes to render her unconscious. 3 to 6 minutes is a very, very long time. It's not a short time period. It's very long, and the defendant continued to sustain these, the pressure to cause her death. There's a lot of witnesses saying that the defendant has mental health problems. There's nothing in the record to show the defendant had mental health problems. The defendant said, I just lost it. Wasn't there testimony to that effect? No, there was no testimony. His statement was, I just lost it. Pardon me? I'm sorry, Your Honor. You said, at all? There was no testimony regarding any mental illness. The reference to mental illness, from my recollection of the record, occurred during sentencing, when it said he received help when he was in the penitentiary. But with regard to any testimony, any evidence, there was no evidence that he suffered from any type of mental illness. The live testimony of DeVona? In mitigation, the defendant presented live testimony of DeVona and argued that he suffered from mental health issues and substance abuse. That was during the sentencing hearing. That wasn't in terms of what the defendant did at trial. Oh, okay. That was at sentencing. Right. And after the defendant killed her, he left the scene, and he drove with her car, in her car with her keys and all of her items, and he went to a motel. And the next day, when he realized that the police could be finding him, could be finding where he's hiding, he moved to another hotel. His acts during the actual strangulation, after she's saying, I can't breathe, after she's struggling, and continued to do it, was not recklessness. And therefore, he was not entitled to a reckless instruction. A voluntary manslaughter instruction. There was no evidence that this defendant acted recklessly. None at all. His statement to the police that he just lost it was not evidence of a mitigated mental state, but rather it was an explanation of his motive, his rage, his anger. He was told by Nikki that she was no longer wanting him in her house and she wanted him to move. He was angry when he went in there. They engaged, according to him, in some type of wrestling, but then the wrestling escalated. And all he sustained was a scratch on his face and on his hand that is far less than what she sustained with the ultimate death. So any type of wrestling, it was still reckless, but he was still choking her and causing her to die. What about the second-degree murder argument and mutual combat? Your Honor, there is no mutual contact. They did not fight on equal terms. Even if this started out as a wrestling, as a tussling, as defendant said in his statement, once Nikki was passed out, it was no longer mutual. Additionally, the serious provocation. But wasn't she the aggressor? She pushed him out the door. That's the defendant's self-determined statement to the police. Didn't say he was. Is that not what the evidence says, that she pushed him out the door? It didn't say pushed him out the door. It said pushed him. Pushed him. She didn't want him. She was pushing him. She didn't want him in the house. And she was pushing him toward or out the door. Out of her apartment. That's what his statement said. Toward or out the door. She was the initial aggressor. Is that? That's the evidence. You're right, Your Honor. That's what the statement of defendants said. But what his statement said, but once, after she pushed him and then they engaged in tussling and the defendant sustained a scratch to his face and a scratch to his hand, yet he continued to choke her until she passed out and continued to choke her until she died. So there was no mutual contact. There was no recklessness. An involuntary manslaughter instruction was not warranted in the case based on these facts of this case. And as we all know, what the medical examiner said, 10 to 20 seconds is a short time to murder someone unconscious and then continue to do it for three to six minutes. What makes it not mutual counsel? Your Honor. Because he choked her? Or was it that I didn't see any evidence about the difference in their weight or their height or anything like that? And I understand she was the aggressor. She was pushing him. They were both engaged in a tussle and fell to the ground is what I saw. I read the evidence. And so what makes that not mutual? Because at the end he was the one who ended up killing her? Is that what makes it not mutual? No, Your Honor. With regard to the disparity, there was a 20-pound difference, and that's one of the factors that a court can consider whether an involuntary manslaughter instruction was warranted. Where was that evidence? Pardon me? Was there evidence of the 20-pound difference? Yes, there was evidence that the medical examiner testified. Who? The medical examiner testified to his weight, and there was evidence in the common law record that showed that he was 20 pounds heavier than she was. But in addition to looking at that factor, the courts also look at the factor of the brutality and the duration of the beating and the severity of the victim's injuries. A slight scratch on the head or on the hand pales in comparison to the strangulation first passing out and then rendering being killed. But also an involuntary manslaughter instruction is generally not warranted when the nature of the killing, the multiple wounds, and the defenselessness of the victim. After the defendant choked her enough to pass out, she was defenseless. She was no longer a threat to him. There was no mutual countenance anymore. With regard to the argument, the trial court properly exercised its discretion in denying the defendant's motion in limine to introduce the entirety of his statement to his sister. Defense counsel correctly noted that he said, I didn't mean to. I'm sorry. I killed her. But there was other information in that statement. He said in the statement, we were just arguing. We were arguing because she wanted me out. I was worried that the neighbors would hear that argument. So defense counsel, or if the defendant wants the whole statement, those other statements regarding the argument and regarding he was worried what the neighbors think, that also, that's against his position at trial when he said he was acting mutual conduct, he was acting recklessly. This shows that he wasn't worried about the victim or whatever. He was worried about what people thought.  He never told his sister it was a fight. I was acting in self-defense. We were just arguing. But with regard to the completeness doctrine, that statement, I killed Nikki, was admissible because it was admission by a defendant. But these other statements with regard to I'm sorry, I didn't mean it, these are expulsory statements and they're inadmissible. However, under the completeness doctrine, they would have been admissible, but in this case they weren't because they didn't meet those statements were not needed to not allow the jury to mislead. Those statements were not needed to put the statement I killed Nikki in a proper context. The statement did not need, I killed Nikki did not need to have the light shed on it so the jury would understand. But what if the other part of I killed Nikki is I killed Nikki by accident? That's still a self-serving statement, Your Honor. And it's still, the jury did need an explanation to determine what this defendant's what. I killed Nikki. It doesn't come under the completeness doctrine. And it certainly doesn't come under the court improperly, you know, denying the motion in limine. I would like to say, in the reply brief, they did make note about the assistant state's attorney in the closing argument saying that it could be interpreted that her closing arguments and also her partner's closing arguments showed or argued that the defendant was a callous, terrible, terrible person. But if you look at those arguments in context, the first argument when he said I killed Nikki was showing what the defendant did after he murdered Nikki, that he fled the scene, that he hid. And then he called his family. It didn't change the fact that he fled the scene. With regard to the rebuttal argument, it was not a misinterpretation. It was not indicative of defendant's heartlessness or self-centeredness. The ASA said that the defendant's statement, I killed her, I choked her, was his own words and it was a response to defense counsel's argument that the police had an agenda when they interviewed the defendant and they didn't follow up on defendant's statement. He lost it. This case is a clear case of recklessness. It was nothing less. A clear case of advanced recklessness. Thank you, Justice Rochford. It was a clear case of murder. There was no mutual combat. There was no recklessness. And we stand on our brief with regard with the other arguments. Thank you. Thank you, counsel. Just a few quick points. The state argues that what happened here is the antithesis of recklessness. But I think we have a leech in front of us that tells us that, you know, this is something that goes to mental state and something that should be decided by a trial or fact. And what the state ultimately is saying is if you have strangulation, which the medical examiner says takes three to six minutes in order to lead to death, you're saying that strangulation can never be involuntary manslaughter. I don't think there's any case that says that. What the issue is is what was the defendant's mental state when he committed these acts. He stated that he just lost it and that something came over him. So, yes, this is absolutely evidence of involuntary manslaughter and I would maintain that that is what was proved. But on top of that, and the state doesn't really get to this, is that this is some evidence that means that Allen was entitled to have the jury, the trial or fact, instructed on it and have them consider it. They could have rejected it, but they should have at least been able to consider this option. Denying him this option meant that they could not consider whether or not there was a mitigating factor in this conviction. Turning to second-degree murder, as I said, I think this is a case of involuntary manslaughter. But because this court does have the ability to reduce a conviction if they think the facts show that, I would argue that, yes, this could also be seen as a case of second-degree murder. Because unlike Leach, where the evidence showed that there was no sign of struggle in the bedroom where it happened, things were not in disarray, here we have Allen's statement that says that Nikki was the initial aggressor. She pushed them and they started fighting. And then the physical evidence in the home showed that a fight actually happened. It was up to the, you could look at the evidence and see whether or not that supports second-degree murder, if there was serious provocation, if there was mutual combat. And if you find that, then you can reduce the second-degree murder. And then finally, about the completeness doctrine. The completeness doctrine requires that the statements should come in, if one party introduces it, the other party should have the opportunity to share the statement in its entirety. If it's made at the same time, about the same circumstances, I can't see how you separate, I killed Nikki from the fact that he then said, I didn't mean it, I'm sorry. All of that comes in together. It's all talking about the same thing. And while it might be exculpatory and while there might also be other things in that statement, which could have been detrimental to the defense, he was still entitled to present it to the jury. And they were still entitled to hear it. And that should have been part of his evidence to then bring to the jury and say, A, he was not guilty of first-degree murder, or had they been properly instructed in voluntary manslaughter, they could have considered that evidence as evidence of involuntary manslaughter. Thank you. Thank you. Thank you. Thank you.    Thank you. Thank you. Thank you. Thank you. Thank you.